**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 25, 2020**

# In the Court of Appeals of Georgia

A20A1293. THE STATE v. HENDERSON.

PIPKIN, Judge.

Brandon Doyle Henderson was charged with driving under the influence, and he filed a motion in limine to exclude the results of his breath test. The trial court found that Henderson had been misled into consenting to a breath test and granted the motion. The State appeals. Because we find that the trial court failed to properly apply the "totality of the circumstances" inquiry, we vacate and remand.

In reviewing a trial court's ruling on a motion to suppress, we defer to a trial court's factual findings. *State v. Council*, 348 Ga. App. 497, 497 (823 SE2d 817) (2019). But where there are no disputed issues of fact or credibility issues, we review the trial court's application of the law de novo. Id. at 500.

So viewed, the record evidence shows that on June 16, 2018, Henderson backed his vehicle into another car parked in a bar's parking lot. A sheriff's deputy on duty in the parking lot saw the collision and followed Henderson, who had exited his car and gotten in line to enter the bar. The deputy asked Henderson to step out of the line to talk to him, and Henderson complied. According to the deputy, Henderson was unsteady on his feet, smelled of alcohol, and was slurring his words. Henderson admitted to the deputy that he had "had a couple of beers" and that he had backed into the other car. The deputy then arrested Henderson for driving under the influence.

After reading Henderson his *Miranda* rights, the deputy read Henderson the implied consent notice as follows:

> Georgia law requires you to submit to a state-administered chemical test under blood, breath, urine or other bodily substances for the purposes of determining if you're under the influence of . . . alcohol or drugs. If you refuse this testing, your Georgia's driver's license or the privilege to drive on the highways of the state will be suspended for a minimum period of one year. Your refusal to submit to the required testing may be offered into evidence against you at trial.
>
> If you submit to testing and the results indicate an alcohol concentration of .08 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year.

2

> After submitting to the required state tests, you are entitled to additional chemical tests of your blood, breath, urine or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit [to] the state-administered chemical test of your . . . breath under the Implied Consent law?[1]

Henderson responded affirmatively, and he was taken to the jail where he was asked to provide two breath samples. Before administering the test, a second deputy confirmed with Henderson that he was freely submitting to the tests. Henderson then provided the samples, both of which showed he had a blood-alcohol content over the legal limit.

Henderson filed a motion in limine to exclude the results of the breath test, arguing that the implied consent read to him was misleading. The trial court agreed. Citing extensively from the Supreme Court's recent case of *Elliott v. State*, 305 Ga. 179 (824 SE2d 265) (2019), the trial court concluded that the implied consent notice given "was materially and substantially misleading because it suggested that if [Henderson] exercised his constitutional right to refuse the state-administered breath test, such refusal could be used against him at trial." Without addressing any other

---

[1] In 2019, the legislature amended OCGA § 40-5-67.1 (b) (2), the implied consent notice for drivers age 21 or older. The deputy read the prior version of the implied consent statute in effect at the time of Henderson's arrest.

3

circumstances surrounding Henderson's arrest and breath test, the trial court concluded that under the totality of the circumstances, Henderson did not voluntarily submit to the test.

The State appeals this ruling, arguing that the trial court, in relying solely on the reading of the implied consent notice by the deputy, failed to correctly apply the totality of the circumstances test. According to the State, the reading of the notice is only one factor to be considered. Absent evidence showing that a defendant was, in fact, misled, the State argues that suppression of test results is not warranted.

In recent years, the Supreme Court has weighed in on the constitutionality of Georgia's implied consent statute. In *Olevik v. State*, the Supreme Court recognized that requiring a defendant to submit a breath sample violates Georgia's constitutional right against compelled self-incrimination. See 302 Ga. 228, 241-244 (2) (c) (iii) (806 SE2d 505) (2017). The Supreme Court rejected, however, the argument that the implied consent notice – the same notice used here – was so inherently coercive that the mere reading of the statute precluded use of any breath test obtained. See id. at 247-248 (3) (a) (i). Rather, the Supreme Court adopted a "totality of the circumstances" test for determining whether a defendant voluntarily consented to a breath test. See id. at 251 (3) (b). Specifically, the Supreme Court held:

the voluntariness of a consent to search is determined by such factors as the age of the accused, his education, his intelligence, the length of detention, whether the accused was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of all these factors on the accused. In determining voluntariness, no single factor is controlling.

Id. at 251 (3) (b) (punctuation omitted).

*Olevik* left open the question of the constitutional implications of a defendant's refusal to submit to testing. That question was answered by the Supreme Court in *Elliott v. State*, which held that our constitutional guarantee against self-incrimination precludes the admission of evidence that a driver refused to submit to a breath test. See 305 Ga. 179, 179-180 (824 SE2d 265) (2019). The Supreme Court went on to note that its holding in *Elliott* "may affect a totality-of-the-circumstances inquiry into whether a defendant voluntarily submitted to a breath test where the State first threatened that, if [the defendant] refused, that would be evidence against [the defendant] at trial." Id. at 223 (IV) (E). But the Supreme Court declined to address how its ruling affected the totality of the circumstances inquiry. Id. In subsequent cases, however, we have continued to employ the totality of the circumstances inquiry. See *Kallon v. State*, __ Ga. App. __ (845 SE2d 348) (2020); *Melton v. State*,

354 Ga. App. 828 (841 SE2d 481) (2020); *Fofanah v. State*, 351 Ga. App. 632, 636 (2) (b) (832 SE2d 449) (2019).

Based on *Olevik* and *Elliott* and their progeny, it is clear that when a defendant seeks to suppress evidence of a breath test, the appropriate inquiry remains whether the defendant's consent to the test was voluntary under the totality of the circumstances. See *Olevik*, supra; *Elliott*, supra; *Kallon*, supra; *Melton*, supra; *Fofanah*, supra. Here, the trial court focused solely on the misleading nature of the implied consent warning.[2] In so doing, the trial court ignored the Supreme Court's holding in *Olevik* that, "[i]n determining voluntariness, no single factor is controlling." *Olevik*, 302 Ga. at 251 (3) (b). Although the reading of the implied consent notice may be one factor that is considered in determining whether consent to a breath test was voluntary, the trial court also must consider factors such as a defendant's age, education, capacity, the nature of questioning, and any threats employed. See *Olevik*, 302 Ga. at 251 (3) (b). Where a trial court's order does not

---

[2] Henderson argued below that there were two inquiries: whether the implied consent notice was "coercive" under the totality of the circumstances, or whether the implied consent warning was "deceptively misleading." He is mistaken. The appropriate inquiry is whether the consent to testing was voluntary based on a totality of the circumstances. *Olevik*, 302 Ga. at 251 (3) (b).

reflect consideration of voluntariness under the totality of the circumstances, remand is required. See *Melton*, 354 Ga. App. at 831-831.

*Judgment vacated and case remanded. Barnes, P. J., and Gobeil, J., concur.*